IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | | |
|---|---|---|
| EVE M. DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:16CV170–HEH |
| | ) | |
| JAMES V. HARNEY, JR., | ) | |
| | ) | |
| Defendant. | ) | |

<u>**MEMORANDUM OPINION**</u>
**(Denying Motion to Dismiss)**

This matter arises from the prosecution of Plaintiff Eve M. Davis ("Davis") for attempted prescription fraud and attempted possession of a controlled substance with intent to distribute. Davis faced these charges following her attempt to fill a prescription at a Wal-Mart store in Fredericksburg, Virginia. Spotsylvania County Sherriff's Deputy James V. Harney, Jr. ("Deputy Harney") responded to the store and eventually arrested Davis. After questioning, she was transported to jail and later indicted. The charges were ultimately *nolle prosequi*. This action focuses on the institution of criminal charges against Davis.

Davis previously brought suit against Deputy Harney for unlawful arrest in violation of 42 U.S.C. § 1983 based on the warrantless arrest occurring at the Wal-Mart store. In that case, the Court granted Deputy Harney's Motion for Summary Judgment. Davis now brings a separate § 1983 claim against Deputy Harney for malicious

prosecution as a result of her subsequent arrest, indictment, and detention on those same charges.

Presently before the Court is Deputy Harney's Motion to Dismiss (ECF No. 13) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Deputy Harney argues that Davis has impermissibly split her claims and *res judicata* bars this second suit. For the reasons stated herein, Deputy Harney's Motion will be denied.

## I. BACKGROUND

As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes plaintiff's well-pleaded allegations to be true, and views all facts in the light most favorable to her. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). Viewed through this lens, the facts are as follows.

On October 5, 2013, Deputy Harney responded to a dispatcher's report of possible prescription fraud at a Wal-Mart pharmacy in Fredericksburg, Virginia. The dispatcher informed him that a pharmacist had called alleging an attempt by Davis to fill a "duplicate" prescription for Adderall.[1] (Am. Compl. ¶ 6.) The pharmacist, Brenda Greer ("Greer"), briefly spoke on the telephone with Deputy Harney before his arrival at the Wal-Mart pharmacy. During this call, Greer informed Deputy Harney that Davis was "flagged" during Greer's review of the Virginia Prescription Monitoring Program ("PMP") for having already filled a prescription for the same medication at a different

---

[1] Adderall is a Schedule II controlled substance.

2

pharmacy four days earlier. Shortly after arriving at the Wal-Mart pharmacy, Deputy Harney placed Davis under arrest. (*Id.* ¶ 8.)

After the arrest, Deputy Harney escorted Davis to Wal-Mart's loss prevention room and began to question her. Deputy Harney told Davis that she had been implicated in other narcotics investigations as being involved in the illegal sale of prescription drugs. As alleged in her Amended Complaint, Davis had not been connected with any such investigations. (*Id.* ¶ 15.) Deputy Harney further implied during the interrogation that Davis was selling Adderall pills to pay for the gas required for her commute to work. Davis contends that she denied any wrongdoing during this period of questioning. (*Id.* ¶¶ 17–18.)

Subsequent to this interrogation, Deputy Harney transported Davis to the Spotsylvania General District Court and sought a warrant for her arrest. There, he told the magistrate that Davis had confessed to selling Adderall during questioning. Davis alleges in her Amended Complaint that she made no such admission. (*Id.* ¶ 20.) The magistrate issued the arrest warrant and ordered Davis held without bond. Davis remained in custody at Rappahannock Regional Jail for sixteen days.[2] (*Id.* ¶ 21.) Following her release, the Commonwealth allegedly amended the previously-issued arrest warrant to include an attempted possession with intent to distribute charge. (*Id.* ¶ 23.)

On March 25, 2014, Davis appeared at her preliminary hearing on the charges pending against her. (*Id.* ¶ 24.) According to the Amendment Complaint, at the

---

[2] Davis also had other pending felony charges at the time.

3

preliminary hearing, Deputy Harney informed Assistant Commonwealth's Attorney Stephanie Fitzgerald ("Fitzgerald"), who was assigned to prosecute Davis's case, that Davis was involved in an illegal prescription drug-dealing ring in the Spotsylvania area and that he was familiar with Davis's name before her arrest on the initial charges. Deputy Harney allegedly had no such information. (*Id.* ¶¶ 25–26.) He purportedly expressed to Fitzgerald that Davis had admitted to selling prescription drugs illegally for gas money during questioning on October 5, 2013. Deputy Harney testified to these facts at the preliminary hearing. Davis contends that she neither admitted to nor engaged in any such activity. (*Id.* ¶ 27.)

On April 21, 2014, an indictment charging Davis with attempted prescription fraud and attempted possession with intent to distribute was presented to a grand jury. On April 25, 2014, following the return of an indictment on these charges by the grand jury, Davis was once again arrested. Davis maintains in her Amended Complaint that the only evidence before the grand jury supporting her indictment was the purportedly false information supplied by Deputy Harney. (*Id.* ¶¶ 28–29.) Davis's trial date was set for August 20, 2014, in Spotsylvania Circuit Court. Fitzgerald ultimately decided to *nolle prosequi* both of the charges. (*Id.* ¶¶ 31–34.)

On February 16, 2016, Davis sought leave to file a second amended complaint in her previous unlawful arrest suit to add a malicious prosecution claim against Deputy Harney; however, the Court denied Davis's motion because the Court had already allowed her to file an amended complaint approximately six months after initiating her suit. On May 16, 2016, the Court granted Deputy Harney's Motion for Summary

4

Judgment. *Davis v. Harney*, 3:15cv387, 2016 WL 2869781 (E.D. Va. May 16, 2016). The Court held that qualified immunity shielded Deputy Harney from liability for the warrantless arrest on October 5, 2013. In making its determination, the Court carefully circumscribed its findings to Davis's initial arrest at the Wal-Mart store.

In this case, Davis asserts a separate malicious prosecution claim against Deputy Harney predicated on his post-arrest declarations. She contends that Deputy Harney made false, incriminating representations following the initial arrest at Wal-Mart which precipitated her subsequent arrest, indictment, and prosecution. (Am. Compl. ¶¶ 37–38.) Deputy Harney now moves for dismissal, asserting that this new action is precluded by the Court's grant of summary judgment in the first case. More specifically, Deputy Harney contends that Davis's present action for malicious prosecution arose "out of the same transaction or series of transactions" already litigated between the parties and is thus barred by *res judicata*. (Dep. Harney's Mem. Supp. Mot. Dismiss Am. Compl. ("Def.'s Mem.") 1, ECF. No. 14.)

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting

5

*Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" to one that is "plausible on its face," rather than merely "conceivable." *Id.* at 555, 570 (citations omitted). In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater & Son*, 385 F.3d at 841. Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. DISCUSSION

"Under the doctrine of *res judicata*, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the *same cause of action*." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n.5 (1994) (emphasis added). *Res judicata* applies when there is "(1) a judgment on the merits in a prior suit resolving (2) claims by the same parties or their privies, and (3) a subsequent suit based on the same cause of action." *Conye & Delany Co. v. Selman*, 98 F.3d 1457, 1473 (4th Cir. 1996) (quoting *Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 42 (4th Cir. 1990)).

In the case presently before the Court, the first two criteria required for application of *res judicata* are successfully met. First, the prior suit ended in a final judgment on the merits. *See Adkins v. Allstate Ins. Co.*, 729 F.2d 974, 976 n.3 (4th Cir. 1984). Second, the present action is between the identical parties that were present in the earlier suit—

namely Davis and Deputy Harney. Accordingly, the outcome hinges upon whether or not the causes of action in the prior and present suits are the same.

As an initial matter, Deputy Harney challenges the validity of a free-standing malicious prosecution claim brought pursuant to § 1983. As he points out, the Fourth Circuit has described a § 1983 malicious prosecution claim as a Fourth Amendment violation that further incorporates the common law elements of malicious prosecution. *See Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). Thus, to make out a valid claim for malicious prosecution pursuant to § 1983, a plaintiff must show that a defendant caused a seizure of plaintiff, pursuant to legal process unsupported by probable cause, and criminal proceedings terminated in a plaintiff's favor. *Id.* (citing *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012)).

The thrust of Deputy Harney's argument is that Davis cannot show that he caused multiple seizures of Davis. Deputy Harney contends that the October 5, 2013 warrantless arrest—the subject of the first suit—constituted the sole seizure of Davis, which did not end until the charges were *nolle prosequi*. Relying on Justice Ginsburg's concurrence in *Albright v. Oliver*, 510 U.S. 266 (1994), Deputy Harney argues that for the purpose of constitutional analysis, Davis was under a continuous seizure from October 5, 2013, until the ultimate disposition of the charges. (*See* Def.'s Mem. 12.)

Davis rejoins that the October 5, 2013 arrest constituted a separate seizure for § 1983 purposes. She argues her initial arrest at Wal-Mart and detention following the appearance before the magistrate, and her arrest subsequent to the grand jury indictment are two distinct seizures for the purpose of this Court's analysis. Notably, these periods

7

of detention were punctuated by a period in which she was released from custody. As Davis points out, Deputy Harney relies on dicta from a concurrence to a plurality opinion for the proposition that she was subject to a single, continuous, constructive seizure from October 5, 2013, until August 2014. As the Fourth Circuit has explained, Supreme Court jurisprudence has counseled against adopting a "'continuing seizure' theory of the Fourth Amendment." *Riley v. Dorton*, 115 F.3d 1159, 1162 (4th Cir. 1997), *abrogated on other grounds Wilkins v. Gaddy*, 559 U.S. 34 (2010). The decision to initially arrest Davis at Wal-Mart, and the subsequent determination that a dormant prosecution should be reinstated based on Harney's representations are clearly binary events. Accordingly, Davis has pled multiple seizures for the purposes of this Court's analysis of her § 1983 malicious prosecution claim.

Irrespective of labeling, the two causes of action are deemed to be identical if "the claim presented in the new litigation 'arises out of the same transaction or series of transactions as the claim resolved by prior judgment.'" *Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir. 1999) (quoting *Harnett v. Billman*, 800 F.2d 1308, 1313 (4th Cir. 1986)). "The expression 'transaction' in the claim preclusion context 'connotes a natural grouping or common nucleus of operative facts.'" *Id.* (quoting *Restatement (Second) Judgments* § 24 cmt. b). "There is no simple test to determine what constitutes the same cause of action." *Aliff*, 914 F.2d at 43.

There are, however, several "factors to be considered in deciding whether the facts of the current and prior claims 'are so woven together' that they constitute a single claim." *Pittson Co.*, 199 F.3d at 704. These factors include the claims' "relatedness in

time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes.'" *Id.* (quoting *Restatement (Second) of Judgments* § 24(2) cmt. b). Although a plaintiff may have been able to bring a particular claim against a defendant in a prior suit, her failure to do so does not necessarily preclude this claim in a future action. *Restatement (Second) of Judgments* § 24 cmt. h ("There is no . . . compulsion on a plaintiff who has a number of claims against a defendant to join them in a single action; he may join them if he wishes, but he is not obliged to do so out of fear that he will lose any claims that he omits to join. Joinder of multiple claims is permissive, not compulsory."); *see also* Fed. R. Civ. P. 18(a) ("A party asserting a claim . . . may join . . . as many claims as it has against an opposing party.").

Davis focuses her argument on the operative facts necessary to prove the causes of action contained in the first case and the second case. (Pl.'s Mem. Opp'n Mot. Dismiss ("Pl.'s Opp'n") 7–17, ECF No. 19.)[3] She summarizes her argument by stating the two cases contain different seizures, occurring at different times, and based upon different wrongful conduct. (*Id.* at 17.) Deputy Harney emphasizes that the case has a common genesis. Furthermore, he stresses that the above-listed factors show that the two cases

---

[3] In her Opposition, Davis engages in a fact specific discussion differentiating between what she must prove to succeed in this case versus the first case. (Pl.'s Opp'n 10–17.) Much of the argument centers on what Davis allegedly told Deputy Harney and what Deputy Harney allegedly knew after the October 5, 2013 warrantless arrest. Deputy Harney "disagrees with the characterization of much of the testimony by Davis." (Def.'s Reply Mem. Supp. Mot. Dismiss Am. Compl. ("Def.'s Reply") 5 n.3, ECF No. 21.) At this early stage, the Court must endeavor to determine the sufficiency of the Complaint, rather than weigh testimony and truly test the merits of a claim or defense. *See Republican Party of N.C.*, 980 F.2d at 952. Resolving any disagreement about the characterization of testimony in this case goes beyond the scope of this Court's mission at this stage, and the Court limits its analysis to the sufficiency of the Complaint.

9

arise from a string of successive acts, dictating a finding that *res judicata* bars the second suit.

Although the two arrests have some common elements, Davis's present action asserting a malicious prosecution claim does not touch upon the facts or circumstances justifying her arrest at the Wal-Mart drug counter, which preceded questioning by Deputy Harney. In granting Deputy Harney's Motion for Summary Judgment, the Court focused solely on whether his actions at the time were objectively reasonable. Davis's present case turns on events that occurred after this warrantless arrest, in particular the purportedly false statements Deputy Harney repeatedly made to advance Davis's prosecution on prescription fraud charges.

The facts and circumstances in Davis's prior and present lawsuits have distinct origins and arguably different objectives. Davis's initial arrest on October 5, 2013 was driven in part by the PMP flagging Davis's prescription, the information provided by Greer to the dispatcher and Deputy Harney, and the dispatcher's report of possible prescription fraud. Davis's claim of malicious prosecution, however, finds its genesis in the purportedly-false information allegedly provided by Deputy Harney to the magistrate, Fitzgerald, and, ultimately, the grand jury pertaining to Davis's drug trafficking activities. These statements were ostensibly motivated by an effort on the part of Deputy Harney to successfully prosecute Davis or possibly to vindicate his prior actions.

Deputy Harney's argument supporting a finding of *res judicata* has two strands. First, he argues that because Davis is seeking the same compensation in her present malicious prosecution suit as she did in her prior unlawful arrest action, her claim should

be precluded. Second, Deputy Harney points out that Davis's prior complaint recited the same alleged false statements presently at issue, and thus Davis "cannot escape the *res judicata* bar by demonstrating that her substantive legal theory in [the present case] differs in material respects from her false arrest count in [the prior case]." (Def.'s Reply 5–6.)

Deputy Harney's first argument fails to consider how the operative facts of the cases are dissimilar. Although like damages may be a factor to consider, *res judicata* analysis focuses on the dispositive facts rather than the relief sought. *See United States v. Tohono O'Odham Nation*, 563 U.S. 307, 315–16 (2011). As pled, these claims are temporally and spatially distinct from one another. Accordingly, the presence of same or similar damages in her separate cases does not, standing alone, preclude Davis's current action.

Deputy Harney's second argument likewise fails to make out a case for preclusion. Although Davis did raise the issue of Deputy Harney's purportedly false statements in her prior Complaint, these statements were not offered in the context of her claim that the initial arrest was unlawful. To the contrary, they appear to have been included to support claims Davis asserted against other defendants, particularly Fitzgerald. More importantly, neither these statements nor their presence in Davis's prior Complaint were at issue in the Court's determination that Deputy Harney was entitled to qualified immunity. In its Memorandum Opinion, the Court noted that its only concern was the circumstances leading up to Davis's initial arrest at the Wal-Mart store. Accordingly, the

fact that Davis presented some facts concerning the alleged false statements made by Deputy Harney in her prior Complaint does not preclude Davis's current action.

## IV. CONCLUSION

At this early juncture, giving all reasonable inferences to Davis, the causes of action at issue in Davis's current and former suits do not appear to be identical. Consequently, Deputy Harney fails to meet the third required element of *res judicata*. The Court will deny Deputy Harney's Motion to Dismiss on that basis.

An appropriate order shall issue.

                                                                  /s/
                                             Henry E. Hudson
                                             United States District Judge

Date: June 30, 2016
Richmond, Virginia